**UNIVERSAL MATCH CORPORATION, a Corporation, Plaintiff-Appellant,**

v.

**NEW CASTLE PRODUCTS, INC., a Corporation, and Air Door, Inc., a Corporation, Defendants-Appellees.**

**No. 13679.**

United States Court of Appeals
Seventh Circuit.

Oct. 11, 1962.

Rexford H. Caruthers, Caruthers & Montrey, St. Louis, Mo., for appellant.

Raymond L. Greist, Chicago, Ill., for appellees.

Before DUFFY, KNOCH and SWYGERT, Circuit Judges.

DUFFY, Circuit Judge.

The fundamental issue in this case is whether defendants' accused device (c) infringes Claims 7, 8 and 10 of Steiner Patent No. 2,863,373. The instant suit was based upon a motion by plaintiff for a contempt citation, but is, in reality, a suit for alleged infringement of a patent.

In July 1957, American Air Curtain Corporation, which was the predecessor in interest to plaintiff, brought suit against the defendants herein. The complaint charged defendants with the tortious appropriation of trade secrets of the plaintiff which related to a novel device called an air screen. It was alleged the air screen had been invented in Switzerland by a man named Steiner, and that plaintiff became the American licensee of Steiner.

The complaint in said action further alleged that negotiations took place between American Air Curtain Corporation and defendant New Castle Products, Inc. in which New Castle Products sought to buy the rights of plaintiff in and to the air screen; that plaintiff disclosed its trade secrets during such negotiations and that thereafter both defendants appropriated plaintiff's trade secrets. Before a trial was had, a consent decree was entered on August 20, 1958. In this decree, defendants acknowledged the validity of the American patent application which had been filed by Steiner, and also the validity of any patent that might be granted thereon. Defendants were permanently enjoined from making, using or selling any device covered by the claims of the Steiner patent application.

Steiner Patent No. 2,863,373, was issued December 9, 1958. It pertained to an air screen by means of which a building entrance can be sealed by a moving barrier of air, permitting unobstructed pedestrian passage through the door while simultaneously preserving the interior building temperature and shutting out exterior elements such as wind, rain, dust, snow and insects.

The motion for contempt alleged a violation by defendants of the final judgment which was entered August 20, 1958, in that defendants were manufacturing, using and selling three devices, referred to throughout the subsequent proceedings as Devices (a), (b) and (c). It was alleged that all three devices were covered by the claims of the Steiner patent. Defendants were permitted to set up two affirmative defenses: (1) prior art, and (2) file wrapper estoppel.

On July 27, 1961, the District Court handed down its Findings of Fact, Conclusions of Law and Order, holding that defendants' Devices (a) and (b) violated the final judgment of August 20, 1958.

but that the defendants' Device (c) did not. This appeal followed.

The eight elements which combine to form both plaintiff's and defendants' air screens are: 1) The *Pit*, which is located below the floor line of the doorway; 2) the *Plenum Chamber*, which is located above the ceiling line of the doorway and which has an outlet opening at the bottom thereof; 3) an *Air Passage*, which has its lower end connected to the Pit and has its upper end connected to the Plenum Chamber; 4) a *Blower*, which forces the air to move; 5) the *Motor*, which drives the Blower; 6) the *Air Discharge Assembly*, which is located within the opening at the bottom of the Plenum Chamber; 7) the *Discharge Assembly Mounting* for the Air Discharge Assembly, which enables the Air Discharge Assembly to be moved; 8) the *Discharge Assembly Control Mechanism*, that moves the Air Discharge Assembly.

In both devices, the Pit, the Air Passage and the Plenum Chamber are all connected together so that the Blower can draw air into the Pit, can move that air upwardly through the Air Passage to the Plenum Chamber and can then force that air to issue downwardly from the Plenum Chamber and pass downwardly across the doorway to the Pit. Thereafter, the process is continously repeated. As the air recurrently issues from the Plenum Chamber and passes downwardly across the doorway to the Pit, it forms a screen or barrier of moving air which seals off the doorway to drafts, dust, dirt and insects.

Normally, the air screen is directed straight down towards the Pit. However, when a wind tends to blow into the doorway and deflect the air screen, Control Mechanism will automatically move the Air Discharge Assembly and thereby incline the air screen outwardly of the doorway and into the wind which is tending to penetrate the doorway. The stronger the wind, the further the Control Mechanism will move the elements of the Air Discharge Assembly and the greater will be the inclination of the air screen into the wind.

The Air Discharge Assembly is located within the opening at the bottom of the Plenum Chamber, which is the ceiling line of the doorway. The Air Discharge Assembly is located directly above the floor grating.

We agree with the trial court that defendants' Devices (a) and (b) [1] are practically identical with each other as far as determining whether or not they are covered by Claims 7, 8 and 10 of the Steiner Patent. A reference hereafter to and a discussion of Device (a) will also cover Device (b).

Device (a) has a plurality of closely adjacent stationary inclined elongated elements forming vanes arranged in two groups. One group is permanently inclined inward, and the other group is permanently inclined outward. A movable masking plate is positioned above the two groups. This plate may be moved to seal off completely either the inward or outward, or part of both of the inward or outward stationary inclined groups.

Defendants' Device (a) does have a plurality of closely adjacent elongated elements which are spaced apart to provide a plurality of air streams passing between the same which serve as flow directing elements the same as called for in the Steiner Patent.

Device (a) has utilized a dominant principle of plaintiff's Discharge Assembly by the use of the elongated elements or vanes to provide a plurality of channeled streams of air. Defendants merely substituted a movable damper control. As found by the trial court, there was a mere separation of one unit into two parts.

We agree with the trial court that the end result of defendants' Device (a) is the same as called for in plaintiff's Claims 7 and 8; that the means which accomplish the result are substantially the same as plaintiff's devices.

---

1. Device (a) is known as a "Constant Mass Shutter" and Device (b) as a "Variable Mass Shutter."

The Finding that "Defendants' Device (a) is not unique in its construction and manner of operation and does not use a materially different means for direction control of the air streams, does not operate in a substantially different manner and principle" is amply sustained by the record.

It follows that we affirm the Finding and Judgment of the trial court that defendants' Devices (a) and (b) violated the Final Judgment which was entered on August 20, 1958.

Device (c) is known as an "Extruded Aluminum Deflector." Plaintiff strongly urges Device (c) infringes Claims 7, 8 and 10 of the Steiner Patent. The trial court held to the contrary.

Device (c) is described in Finding of Fact 7, as follows:

"7. Device (c) * * * consists of two sets of a number of fine orifices formed in a continuous corrugated plate which plate extends depthwise of the entryway without interruption the full length of the air discharge assembly. Both sets of orifices are fixed in their angular positions and cannot be tilted, the orifices in one set are directed angularly downward and outward and the other set angularly downward and inward in relation to the vertical line from Plenum Chamber to the Pit Chamber. The orifices in each set are arranged in transversely extended rows, and are spaced from each other crosswise of the doorway, with the rowed orifices in one set alternating in position with the orifices in the rowed in the other set, in laterally offset or staggered relation to the rowed orifices in the other set. The orificed corrugated plat is shiftable laterally."

When Device (c) is in operation, air is forced through the orifices from the Plenum Chamber from which it emanates as multiple streams. The orifices in both sets coact with the underlying longitudinally extending fins to provide valved jet ports. When the perforated slot is shifted laterally, the valving action operates to progressively open up or close off the jet ports in one set while progressively closing off or opening up the jet ports in the other set. When one set of orifices is fully opened, the other set of orifices is fully closed, and the air streams pass downwardly at an inclination that is outwardly of the doorway. However, when the plate is shifted laterally for a distance corresponding to the width of any orifice, the reverse is true. If the plate is shifted laterally into a position in which only half of the areas of each of the orifices are open, the air streams will flow downwardly as distinguished from an outward and inward flow.

The trial court found, and we agree, that defendants' Device (c) does not have any plurality of closely adjacent elongated elements which are spaced apart. Device (c) relies on downward direction control of air streams by means of stationary spaced angular pointed orifices inward and outward and a valvular means to partially or fully stop the air passing through the outward and inward pointed orifices.

The Air Discharge Assembly of the Steiner Patent is characterized by a plurality of closely adjacent elongated elements that are spaced apart. These elements provide between the same, a plurality of continuous flowing air streams. Means are provided for moving these elongated elements which are in the form of vanes of triangular cross section, and are pivotally mounted, so they may be tilted in order to direct the stream of air passing between them, downwardly or outwardly, after the fashion in which the nozzle of a garden hose can be turned in one direction or the other.

The end result of defendants' Device (c) is the same as the devices under plaintiff's Claims 7, 8 and 10. However, the trial court found, and again we agree, that the means by which the defendants accomplished such end result is not substantially the same kind as plaintiff's devices, and that such means does not operate in substantially the same way as

does plaintiff's devices. The finding of the District Court was, in part: " * * * Defendants' Device (c) is unique in its construction and manner of operation and uses a materially different means for direction control of the air streams, operates substantially in a different manner and on an entirely different principle. The structural and functional features of defendants' Device (c) are substantially different than those of the devices covered in plaintiff's Claims 7, 8 and 10." There is substantial evidence in the record to sustain that finding. Certainly, it cannot be said that it is clearly erroneous.

■ To constitute infringement, there must be not only substantial identity of result but also substantial identity of the means used in accomplishing that result, and substantial identity of operation of such means. Graver Tank & Mfg. Co., Inc. et al. v. Linde Air Products Co., 339 U.S. 605, 607, 608–610, 70 S.Ct. 854, 94 L.Ed. 1097; Scherbatskoy v. United Steel Corporation, et al., 7 Cir., 287 F.2d 552, 558.

■ We hold that defendants' Device (c) did not infringe Claims 7, 8 and 10 of Steiner Patent No. 2,863,373, and the District Court was correct in so holding.

■ Plaintiff argues that as the District Court found in its favor as to Devices (a) and (b), it was entitled to reimbursement of plaintiff's expenses including attorney fees; that as a minimum, it should recover such expenses as are attributable to that portion of the litigation involving Devices (a) and (b). Although Devices (a) and (b) had not been sold, yet, they had been offered for sale. Defendants were familiar with the Steiner patent. If plaintiff had not litigated its claim that Devices (a) and (b) were infringed, it might well have been claimed that it had abandoned its patent, at least, in part. The plaintiff was required to litigate as to Devices (a) and (b). It has been successful as to its contentions in that respect yet, now it finds the entire financial burden of defending its rights is resting upon it.

We think the decree of the District Court should be modified to permit plaintiff to prove up its expense in litigating in this case as to Devices (a) and (b), and should recover same.

Affirmed in part and reversed in part and remanded for further proceedings consistent with this opinion.