**MAXANT BUTTON & SUPPLY CO., Plaintiff-Appellant,**

v.

**SEARS ROEBUCK & CO., Defendant-Appellee.**

**No. 16293.**

United States Court of Appeals Seventh Circuit.

Jan. 16, 1968.

Edwin Phelps, Wilmette, Ill., William A. Snow, Chicago, Ill., for appellant.

Frank H. Marks, Chicago, Ill., Maxwell James, New York City, Kahn, Adsit, Arnstein, Gluck, Weitzenfeld & Minow, Chicago, Ill., James & Franklin, New York City, for appellee.

Before HASTINGS, Chief Judge, and KILEY and CUMMINGS, Circuit Judges.

HASTINGS, Chief Judge.

Plaintiff Maxant Button & Supply Co. (Maxant) brought this action against Sears, Roebuck & Co. (Sears) in the federal district court. Maxant charged Sears with patent infringement. Sears

counterclaimed asserting invalidity and noninfringement.

Maxant is the owner by assignment of U. S. Letters Patent in suit, Re. 25,716 (the tool patent), issued January 26, 1965. This is a reissue of original patent No. 2,943,520, issued July 5, 1960, on an application filed October 27, 1958.

Also, at issue before the trial court was Re. 25,738, a companion reissue, issued March 2, 1965, for "Garment Button and Means and Method of Making Same." This latter reissue patent is not before us in the instant appeal.

Following a trial without a jury, the district court, after considering findings and conclusions proposed by each party, entered and filed findings of fact and conclusions of law favorable to Sears and adverse to Maxant. It entered judgment holding reissue patent Re. 25,716 to be invalid and void in law as to the suit claim 4; that suit claim 4 of said Re. 25,716 is not infringed by Sears; that Sears have judgment on the complaint and the complaint be dismissed on the merits; and that Sears recover its costs from Maxant.

Maxant has appealed from the final judgment as it relates to reissue patent Re. 25,716 (Re. 716).

Maxant's Re. 716 is entitled "Fabric-Covered Garment-Button Assembling Device."

Re. 716 states that the "invention relates to a device for assembling a garment button formed by two nested improved-form of flanged disks with a piece of fabric overlaying the face of the outer disk * * *."

Buttons of this kind are used on feminine garments by dressmakers, using a piece of fabric to cover buttons or metal disks. Tools used in making fabric-covered buttons are available on the open market at small cost, usually in the form of sales kit cards, where dressmaking accessories are sold.

Maxant's patented invention, being the single suit claim 4, set out in Re. 716, states in the specifications:

"The main objects of this invention are to provide an improved form of device for assembling an improved form of fabric-covered buttons; to provide an improved form of button-assembling device for use with a pair of flanged disks dimensioned to be permanently retained in interlocked nested relationship by the perimetrical portion of the fabric, which overlies the face of the outer disks, being interposed between the disk flanges; to provide an improved form of button-assembling device of this kind adapted to tauten a piece of fabric over the face of one flanged disk and position the perimetrical portion of the fabric within the disk flange to permit a second flanged disk to be depressed into the first disk and become permanently retained in nested relationship by the intervening fabric; and to provide an improved fabric-covered button-assembly device of this kind which is simple in construction, very economical to manufacture, and extremely facile to use."

Maxant's invention in Re. 716 is described in claim 4:

"A device for assembling an outer and inner pair of flanged discs [1] in permanently interlocked nested relationship by the interposed marginal portion of a piece of fabric overlying the outer face of the outer disc to form a fabric-covered garment button, the device comprising a one-piece elastic element having an upwardly-open cavity therein with a base portion sufficiently closed to support thereon the outer disc with the fabric tautened thereover and also prevent the fabric-covered disc from passing beyond the base portion of the cavity, and rib means spaced above the base portion of the cavity a distance substantially equal to the height of the outer disc flange and serving to maintain the

---

1. For some unexplained reason Re. 716 appears to use both the spelling of "disk" and "disc."

outer disc, with the tautened fabric thereon, on the base portion of the cavity, the rib means also serving to bias the fabric inwardly over the outer-disc flange to facilitate folding the fabric into the outer disc preparatory to depressing the inner disc into the outer disc over the folded-in fabric to complete the formation of the fabric-covered button within the cavity subject to the removal of the button from the element."

Sears is engaged in purchasing from the manufacturer and selling to the public button kits containing the charged infringing rubber tool. John Dritz & Sons, Inc., a South Carolina corporation, manufactures such alleged infringing devices and sells them to Sears.

The Dritz devices are covered by a patent issued to Arthur Dritz ("Hand-Assembled Fabric Covered Buttons"), No. 2,930,093 on March 29, 1960, on an application filed November 25, 1955. They are also covered by a later patent issued to Arthur Dritz ("Hand-Assembled Fabric-Covered Buttons"), No. 3,-242,544 on March 29, 1966, on an application filed February 26, 1964.

The Dritz patent No. 2,930,093 (093) states in its specifications:

"The assisting tool T is employed to aid in the shell covering operation. This tool T comprises a ring or annulus as shown in Fig. 1 open at the bottom, the size and shape of the internal cavity 16 thereof corresponding to that of the exterior of the button shell S and preferably having a slight clearance all around the button base B which clearance is, however, somewhat less than the thickness of the covering material C. Thus the internal diameter of the cavity 16 is slightly greater than the external diameter of the shell S, and preferably equal to or less than the external diameter of the base B plus twice the thickness of the covering sheet C. The internal surface of the cavity 16 is frictional in nature. While the ring T may be made of rigid material, it is preferred to make it of soft, resiliently formed material

such as rubber so that the internal surface of the cavity 16 will have the desired frictional characteristic and so that it may readily accommodate itself to slight differences in the dimensions of the shell S and the thickness of the various cover sheets which might be employed therewith.

"The ring T is provided at its upper end with an inwardly extending rim 18 defining a restricted entrant opening which generally conforms in shape to the shell S, but the internal diameter of which is somewhat less than the external diameter of the said shell S. The said rim 18 is made of some soft and readily resiliently deformable material such as rubber, and in the preferred embodiment herein illustrated, it is integral with and formed of the same material as the ring T itself."

The tool described in the Dritz patent No. 3,242,544 (544) which the district court found to be identical with the alleged infringing device, is described in the specifications of the patent as:

"A tool to facilitate the assembling of the button parts, the same being an improvement of the assisting tool disclosed in my prior Patent No. 2,930,-093, issued March 29, 1960. The tool comprises an elastomeric ring member 42, made preferably of soft or resilient rubber, formed with a button receiving cavity 44, the interior wall of said cavity having an inner diameter $d$ substantially equal to the outer diameter of the button shell plus twice the thickness of the fabric cover, as will be seen by reference to FIG. 8 of the drawings. The top of the elastomeric ring 42 is integrally formed with an inwardly disposed rim part 46 which defines a restricted opening 48; and the bottom of the ring is similarly integrally formed with an inwardly disposed rim part 50 which defines a restricted opening 52; and the structure is such that both openings 48 and 52 are of similar or equal size. The rim parts 46 and 50 are spaced axially to receive and seat there-between a button

shell and fabric cover as best illustrated in FIG. 8, and FIG. 10.

"The structure of the elastomeric ring is also preferably such that the top rim 46 is formed with faces 46', and 46², which converge downwardly and the bottom rim is formed with faces 50' and 50² which converge upwardly of the ring member. The shape of the elastomeric ring is symmetrical about a median horizontal plane. With this construction, the tool may be used in either an upright or inverted position. In either position, the bottom rim forms a rest or seat for the shell and the top rim forms a resilient flap which as a shell and fabric cover is inserted into the ring (moving from the FIG. 7 to the FIG. 8 condition) exerts a smoothing out pressure on the cover and directs the tucking-in of the peripheral parts of the cover, as depicted in FIG. 8. This construction also permits the button either when partly (and incorrectly) assembled or when completely assembled to be pushed through and expelled through the button opening of the ring member."

### NEW MATTER

The trial court's conclusion that Re. 716 is invalid was based on its findings that the reissue specifications and claim contained new matter having no antecedent in the original 520 patent, that there had been public use of the claimed new matter more than one year before the claims were presented to the Patent Office, and that the reissue claim, claim 4, was anticipated by the Dritz 093 patent.

The recitals in the Re. 716 patent found to constitute new matter are those claiming "rib means spaced above the base portion of the cavity a distance substantially equal to the height of the outer disc flange and serving to maintain the outer disc, with the tautened fabric thereon, on the base portion of the cavity, the rib means also serving to bias the fabric inwardly over the outer disc flange to facilitate folding the fabric into the outer disc preparatory to de-pressing the inner disc into the outer disc over the folded-in fabric to complete the formation of the fabric-covered button within the cavity subject to the removal of the button from the element."

The trial court found incorrect the recital that the rib means are "spaced above the base portion of the cavity a distance substantially equal to the height of the outer disc flange." It found that the distance is substantially the same as the over-all thickness of the finished button, as stated in the specification portion of Re. 716.

We find no inconsistency between the specification and the claim. The claim speaks of the distance between the "base portion of the cavity" and the rib. The specifications state that the rib is "axially spaced from the base of the cavity 22 so that *the distance 23* (FIG. 5) is substantially the same as the over-all thickness 24 of the finished button." (Emphasis added.) In FIG. 5 the distance 23 is measured vertically from the *lowest* point in the "base portion of the cavity," while in the claim the distance referred to is that between the rib and the top of the "base portion of the cavity." The base portion of the cavity is not a flat surface, but a concave one, truncated by a cylindrical passage which permits the user to apply pressure to the finished button and force it out of the cavity.

The original patent did not specify the distance between the concave base portion of the cavity and the rib means. Nor did the original patent specify that one of the functions of the rib means is "to bias the fabric inwardly over the outer-disc flange to facilitate folding the fabric into the outer disc."

The trial court found that the latter recitals have no antecedent or support in the description or drawings of the original 520 patent, rejecting Maxant's contention that they are suggested by FIG. 7 of the 520 patent.

■ Not every deviation from the language of the original patent constitutes new matter. "[A]n applicant for reissue may fully describe his original

invention and include in his new description and claims not only what was described before, but also what was suggested or implied in the original drawings, specifications and models." Weller Manufacturing Company v. Wen Products, Inc., 7 Cir., 231 F.2d 795, 800 (1956).

■ We have examined FIG. 7 and the testimony concerning the effect the rib of the 520 patent would have on the protruding fabric. We cannot say the trial court's finding on new matter was clearly erroneous. FIG. 7 shows a cross-section of an outer disk of a button, with a piece of fabric stretched across its face, inserted into the assembly tool. The fabric protruding above the rib of the tool appears bunched, alternately inclined inwardly and outwardly. The outer disk is shown resting on the base of the assembly tool with the flange of the disk protruding into the opening formed by the rib. Sears' expert testified that inward biasing is not an inherent function of the rib positioned as it is shown in FIG. 7 of the 520 patent.

■ An application for reissue of a patent may not contain new matter, 35 U.S.C.A. § 251, and a reissue which contains such matter is invalid, see United States Industrial Chemicals Co. v. Carbide & Carbon Chemicals Corp., 315 U.S. 668, 675–676, 62 S.Ct. 839, 86 L. Ed. 1105 (1942); Lockwood v. Langendorf United Bakeries, Inc., 9 Cir., 324 F.2d 82, 94 (1963).

Since we conclude that the recital concerning inward biasing was new matter, we need not consider whether the recital concerning the distance of the rib from the base of the cavity also constitutes new matter, although, as the above discussion indicates, the distance shown in FIG. 7 appears to be less than that claimed in claim 4 of Re. 716.

## LACK OF INVENTION

The Re. 716 patent differs from the Dritz 093 patent in only two respects. First, it claims a base portion of the assembly tool having a concave surface and positioned such that its distance from the rib substantially equals the height of the outer disk flange. Second, it claims as one of the functions of the rib that of serving to bias the fabric inwardly over the outer disk flange, facilitating folding the fabric into the disk.

■ The trial court found that providing a base portion for the cavity was an obvious expedient producing no new results unattainable with the Dritz 093 tool resting on a table or other support.

The sole function claimed for the base is to support the button in the tool and prevent it from passing beyond the base portion of the cavity. That function can be performed by any flat surface on which the tool is placed. The trial court's findings are supported by substantial evidence.

■ The trial court found that the rib on the Dritz 093 tool served to incline the protruding fabric inwardly, as Maxant claimed for its Re. 716 tool. FIG. 6 of the Dritz 093 patent shows a cross-section of a fabric-covered outer disk inserted into the cavity of the 093 tool. It shows a space between the top of the disk and the lower rim of the rib. According to Sears' expert witness, an inward biasing of the fabric is achieved if the depth of the cavity exceeds the height of the fabric-wrapped outer disk, permitting the rib to spring back after the disk is pushed into the cavity and to constrict the opening of the cavity. This evidence supports the court's finding.

We conclude that the trial court correctly held Maxant's Re. 716 patent invalid on grounds of lack of invention.

## NON-INFRINGEMENT

The Dritz 093 tool and the alleged infringing Dritz tool marketed by Sears were found by the trial court to be the same, except for the addition of a rib at the bottom of the alleged infringing tool which is identical with the top rib. To sustain its cause of action, Maxant was required to establish that without the rib the Dritz tool did not anticipate the Maxant tool, but that with the rib the Dritz tool infringed Maxant's patent. Therefore, assuming the Re. 716 patent

was valid and was not anticipated by the Dritz 093 tool, the alleged infringement must lie in the addition of a lower rib to the Dritz tool.

■■ The trial court found that the lower rib on the alleged infringing tool may serve as a support for the outer disk, but that it is structured to permit the finished button to pass through the bottom of the cavity. The record discloses that the tool is designed as the court found. It does not embody the concept, design or function of the base portion of the Maxant tool, and does not infringe the Maxant Re. 716 patent. If the means used in the patented device and the alleged infringing device to accomplish the same result are not substantially identical, there is no infringement. Graver Tank & Mfg. Co., Inc. v. Linde Air Products Co., 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (1950); Elgen Manufacturing Corporation v. Ventfabrics, Inc., 7 Cir., 314 F.2d 440 (1963); Universal Match Corp. v. New Castle Products, Inc., 7 Cir., 308 F.2d 842 (1962).

■ Determining on this record that the findings of fact by the trial court are not clearly erroneous but are adequately supported by the record, and that the correct legal criteria were applied, the judgment of the district court is affirmed.

Affirmed.