KELLEY COMPANY, INC., Plaintiff,

v.

RITE–HITE CORPORATION,
Defendant.

No. 69–C–590.

United States District Court,
E. D. Wisconsin.

Jan. 17, 1973.

Andrus, Sceales, Starke & Sawall, by Glenn O. Starke, Milwaukee, Wis., for plaintiff; Elwin A. Andrus, Richard O. Wright, Milwaukee, Wis., of counsel.

Foley & Lardner, by Gilbert W. Church, Milwaukee, Wis., for counsel.

## OPINION

MYRON L. GORDON, District Judge.

The plaintiff in this action has charged the defendant with the infringement of four patents relating to permanent adjustable dockboards. The patents here in question are:

(1) Kelley Reissue 25,249 ("Reissue")
(2) Kelley et al., 3,117,332
(3) McGuire 3,203,002
(4) Pfleger et al., 3,137,017

Dockboards of various types have historically been employed to bridge the gap between a loading dock and the bed of a truck to facilitate the loading or unloading of the truck. A dockboard may be a simple metal plate or it may be a sophisticated piece of machinery such as is involved in the instant lawsuit.

Certain problems are inherent in loading or unloading trucks. Loading docks vary in their above-grade height and truck beds vary in height from truck to truck. The same truck may have a change in height when the weight of the load on the truck is changed. In addition, portable dockboards present operating difficulties during the loading or unloading of a truck; for example, a portable ramp may disengage from either the dock or from the bed of the truck.

The dockboards here in question have been designed to minimize these problems. Both plaintiff's models and the defendant's accused models are permanently mounted and upwardly biased dockboards so that when a dock attendant releases a hold-down mechanism, the dockboard rises to an inclined position. An extension lip which previously hung in a pendent or vertical position is activated to a horizontal position; the activation of the extension lip may be accomplished manually as shown by the Reissue patent or automatically as shown by the other patents here in question. The dock attendant then walks the dockboard down until the extension lip engages the bed of the truck and thereby covers the hiatus between the loading dock and the bed of the truck.

## I. INFRINGEMENT

A. The Reissue Patent (Kelley RE 25,249)

The plaintiff has alleged infringement of its Reissue patent by the defendant's ADB model dockboard and by the defendant's 1300 series dockboard. The defendant has admitted that the ADB dockboard includes all of the elements of Reissue claims 1 and 11, but denies that the lip lifting means of the accused ADB model dockboard is the equivalent of the lip lifting handle described in the Reissue patent. In addition, the defendant has admitted that the ADB model dockboard infringes claim 13 of the Reissue patent if the latter is held to be valid.

The defendant has stipulated that its 1300 series dockboard includes elements 1–9 inclusive of claim 1 as set forth in plaintiff's exhibit 32 but disputes element 10 of claim 1. The defendant has also stipulated that the 1300 series dockboard includes all the elements set forth in claim 11 of the Reissue patent but denies that the lip lifting means of the accused 1300 series dockboard is equivalent to the lip lifting means shown by the Reissue patent. In addition, the defendant has admitted the infringement of claim 13 of the Reissue patent if it is found valid and enforceable.

The test of infringement is whether the device claimed in the patent and the accused device perform substantially the same function in substantially the same way and accomplish substantially the same result. Graver Mfg. v. Linde Co., 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (1950); Ortman v. Maass, 391 F.2d 677 (7th Cir. 1968); Elgen Manufacturing Corp. v. Vent Fabrics, Inc., 314 F.2d 440 (7th Cir. 1963); Uni-

versal Match Corp. v. New Castle Products, Inc., 308 F.2d 842 (7th Cir. 1962).

The lip lifting means described in the Reissue patent and shown on plaintiff's exhibits 32 through 37 inclusive consists of a lever or operating handle (39) attached to a hinge tube (38) which in turn is welded to the extension lip. A dog or pin (41) of the lever or operating handle (39) is inserted into an opening (42) of the hinge tube (39). A dock attendant manually rotates the lever or operating handle (39) causing the extension lip to swing from its pendant or inoperative position to its horizontal position.

The lip lifting means of the accused ADB model as shown on plaintiff's exhibit 35 consists of a snap line or cable attached to the frame of the dockboard and to a lever or arm (91) which is welded to the undersurface of the extension lip and, according to the testimony adduced at trial, welded to the hinge tube. When the ramp is elevated to its upward position, the snap line becomes taut, causing the lever or arm (91) to rotate and the extension lip to swing from its pendant or inoperative position to its horizontal position.

The principal difference in the operation of the lip lifting means of the Reissue patent and the accused ADB model is that the force applied to the lever (39) in the Reissue patent is supplied directly by the dock attendant, while the force applied to the lever (91) of the ADB model is supplied indirectly by the dock attendant when he causes the dockboard to rise to its elevated position. In both cases, a force is applied to a lever attached to the hinge tube and extension lip causing the lip to swing from its pendant position to its horizontal position.

■ In my opinion, the accused device performs the same function in substantially the same way and accomplishes the same result; thus, if the Reissue patent is valid, I believe that the accused ADB model dockboard infringes claims 1, 11, and 13 of the Reissue patent.

Element 10 of claim 1 of the Reissue patent is addressed to the release of the extension lip locking mechanism. The means described in the Reissue patent consists of a plate (56) attached to the locking mechanism or bar (51) and a plate (57) attached to the lever or operating handle (39). When the extension lip comes into contact with the bed of the truck, the lever or operating handle (39) returns to its storage position thereby causing plate (57) to engage the plate (56) attached to the locking mechanism or bar (51). The weight of the lever or operating handle (39) is thereby applied to the locking mechanism or bar (51) causing it to move to a point below the abutment (53) attached to the hinge tube (38). When the bed of the truck is moved from under the extension lip, the extension lip returns to its pendent position.

The locking mechanism of the accused 1300 series dockboard as shown on plaintiff's exhibit 32 consists of a linkage (62) with a notched bar (56) engaging an abutment or pin (54) attached to the ramp. Upon coming into contact with the bed of a truck, the extension lip is moved to its fully extended position causing the linkage (62) to move toward the front of the dock, thereby releasing the force applied to the notched bar (56) upon the abutment or pin (54). The notched bar (56) then drops to a point below the abutment or pin (54).

Both the Reissue patent and the accused 1300 series dockboard employ as a locking mechanism a bar contacting an abutment and held in the locked position by the weight of the extension lip. When the extension lip has become fully extended, the locking bar is moved to a point below the abutment, thereby permitting the extension lip to return to its pendent position when the bed of the truck is removed.

In my view, the accused 1300 series dockboard performs the same function

in substantially the same manner and achieves the same result. If the Reissue patent is valid, it follows that the accused 1300 series dockboard infringes claim 1 of the Reissue patent.

The defendant admits that the 1300 series dockboard contains all elements of claim 11 of the Reissue patent, but it denies that the lip lifting means as shown in plaintiff's exhibit 33 is equivalent to the lip lifting means of the Reissue patent. I believe that the lip lifting means of the accused 1300 series dockboard performs the same function as the lip lifting means of the Reissue patent in substantially the same manner with the same result.

Attached to the extension lip of the accused 1300 series dockboard is a lever connected to a linkage (62) which abuts a notch in a cam (38). When a dock attendant causes the dock to rise to its elevated position, the cam is rotated by a roller (88), thereby causing the linkage (62) to move forward and force the lever attached to the extension lip causing it to extend to its horizontal position.

Both the Reissue patent and the accused 1300 series dockboard cause the extension lip to move to its horizontal position by means of a force applied to a lever attached to the lip. The principal difference between the Reissue patent and the 1300 series is that in the Reissue device, the dock attendant directly supplies the force to extend the lip by the manual operation of the lever or operating handle (39) while with the 1300 series dockboard the attendant indirectly supplies the force by causing the dockboard to rise to its elevated position. This difference is not of such moment to save the accused 1300 series dockboard from being held to infringe claim 11 of the Reissue patent if the Reissue patent is determined to be valid.

The defendant has stipulated that the 1300 series infringes claim 13 of the Reissue patent if the latter is determined to be valid.

B. The Kelley Patent (Kelley et al., 3,117,332)

The plaintiff has alleged infringement of its Kelley patent by the defendant's 1300 series and ADB model dockboards. As to claim 1 of the Kelley patent, the defendant has stipulated that the accused 1300 series dockboard contains elements 1-4 inclusive. Elements 5-8 inclusive as shown in plaintiff's exhibit 38 remain in dispute.

The lip lifting means described in elements 5 and 6 of the Kelley patent consists of a lever (44) which is pivoted to the ramp. At one end of the lever (44) is a roller (46) which bears against the underside of the extension lip. The other end of the lever (44) is connected to a cable (47) and spring (48) mechanism attached to the frame of the dockboard. When the ramp is raised to its elevated position, the cable (47) becomes taut causing the lever (44) to pivot from its inoperative position to its operative position with the roller (46) contacting the extension lip and forcing it to rise to its horizontal position.

The equivalent to the lip lifting means of the Kelley patent is found in the 1300 series dockboard. The cam (38) shown on plaintiff's exhibit 38 is caused to pivot by spring action from its inoperative position with the raising of the ramp to the elevated position. This in turn causes a linkage (62) to apply force to a lever attached to the underside of the lip. When the extension lip is returned to its inoperative position, the cam returns to its inoperative position. In both the Kelley patent and the accused 1300 series, the lip lifting means is in an operative position while the ramp is in an elevated position and returns to its inoperative position only when the ramp is in its horizontal position.

The lip holder described in element 7 of claim 1 of the Kelley patent consists of a latching bar (51) which is pivotally mounted to the ramp by a pin (45). As the ramp is elevated to its inclined position, the latching bar (51) is forced to its operating position by the lever (44). The latching bar (51) is held in its operative position by the weight of the extension lip. As the extension lip is

moved to its operative position upon contact with the bed of a truck, the weight of the extension lip is removed from the latching bar (51) which returns to its inoperative position by gravitational force.

The locking mechanism of the accused 1300 series dockboard consists of a linkage (62) with a notched bar (56) engaging an abutment or pin (54) attached to the ramp. The extension lip is held in a horizontal position as long as the weight of the extension lip is transmitted through the linkage (62) and notched bar (56) to the abutment or pin (54). When the weight of the extension lip is transferred to the truck bed, the notched bar returns to its inoperative position by gravitational force.

Element 8 of claim 1 of the Kelley patent is addressed to the means employed to bring the locking mechanism to the operative position of supporting the ramp. As the ramp is elevated, a lever (44) pivots and applies force to a torsion spring (53) which has one leg bearing against the latching bar (51) and one leg bearing against a lever or lip lifting arm (44). The application of such force is transmitted through the torsion spring (53) and moves the lip holder to its operative position. The removal of the force exerted by the lever or lip lifting arm (44) permits the lipholder to fall by gravity to its inoperative position upon release of the weight of the lip.

The locking mechanism of the accused 1300 series consists of a torsion spring (60) attached to the posterior end of the notched bar (56) and bears against the cam (38). As the cam is pivoted by the raising of the ramp to its elevated position, sufficient force is applied to the torsion spring (60) to cause the notched bar (56) to move to its operative position. The removal of the force upon the torsion spring (60) permits the notched bar (56) to fall by gravity to its inoperative position upon release of the weight of the lip.

I believe that the 1300 series dockboard contains elements 5–8 inclu-

sive and that such elements perform substantially the same function in substantially the same manner and with the same result. I also find that the 1300 series dockboard infringes claim 1 of the Kelley patent if the latter is valid and enforceable.

The parties have stipulated that the accused 1300 series contains elements 1–6 inclusive of claim 2 of the Kelley patent. In addition, element 7 of claim 2 of the Kelley patent is similar to element 6 of claim 1 of the Kelley patent. For the same reasons stated above, I find that the accused 1300 series dockboard contains element 7 of claim 2 of the Kelley patent.

Elements 8 and 9 of claim 2 of the Kelley patent are similar to elements 7 and 8 of claim 1 of the Kelley patent. For the same reasons set out above, I conclude that the accused 1300 series dockboard contains elements 8 and 9 of claim 2 of the Kelley patent.

I conclude that such elements perform the same function in substantially the same manner and achieve the same result. Thus, the accused 1300 series dockboard infringes claim 2 of the Kelley patent if such patent is found to be valid.

The defendant has stipulated that the accused 1300 series dockboard infringes claim 7 of the Kelley patent if the latter is valid and enforceable. The defendant has also stipulated that the accused ADB model dockboard infringes claim 7 of the Kelley patent if the court finds the Kelley patent to be valid.

The ADB model dockboard is also accused of infringing claim 9 of the Kelley patent. The defendant has stipulated that the ADB model dockboard contains elements 1–9 inclusive but denies that such model contains element 10 of claim 9 of the Kelley patent.

Element 10 of the Kelley patent has already been described. The plaintiff alleges that the spring means (43) of the ADB model dockboard as shown in plaintiff's exhibit 42 performs substantially the same function as the torsion

spring (53) of the Kelley patent in substantially the same manner to achieve the same result.

The torsion spring (53) of the Kelley patent is activated when the ramp is raised to the elevated position for one leg of the torsion spring (53) bears against the latching bar (51) and the other leg bears against a lever or lip lifting arm. The tension spring (43) of the accused ADB model dockboard is also activated when the ramp is raised to the elevated position by a cable attached to the spring (43) on one end and to a chain (44) attached to the frame of the dockboard on the other end.

In my opinion, the spring means of the accused ADB model dockboard performs substantially the same function in substantially the same manner and achieves substantially the same result as the spring means set out in element 10 of claim 9 of the Kelley patent. Accordingly, I find that the ADB model dockboard infringes claim 9 of the Kelley patent if such patent is ruled valid.

C. The McGuire Patent (3,203,002)

The ADB model dockboard is alleged to have infringed claims 16 and 17 of the McGuire patent. The defendant has stipulated that the only area of dispute concerning claim 16 is whether the accused ADB model dockboard contains a "bell crank" as stated in the claim.

A "bell crank" is defined in Webster's Third New International Dictionary (1967) as "a lever having its fulcrum at the apex of the angle formed by its two arms." I believe that a bell crank is employed in the accused ADB model dockboard. The bell crank is formed by arm (91) welded to the undersurface of the lip extension and connected to the ramp by the hinge tube. Accordingly, I find that the accused ADB model dockboard infringes claim 16 of the McGuire patent if valid and enforceable.

In addition to my holding that the ADB model dockboard infringes claim 16 of the McGuire patent, I also find that the accused ADB model dockboard infringes claim 17 of the McGuire patent if valid and enforceable. The pawl (101) of the accused ADB model dockboard is moved by a tension spring (43) connected to a snap line (40) as shown on plaintiff's exhibit 43.

The defendant's 1300 series dockboard is also accused of the infringement of claim 20 of the McGuire patent as shown on plaintiff's exhibit 44. The parties agree that the accused 1300 series dockboard contains elements 1 and 2 of claim 20 of the McGuire patent.

Element 3 of claim 20 of the McGuire patent is shown by a lever or arm welded to the underside of the extension lip and to the hinge tube and connected to the linkage mechanism (62) by a pin (68) on the accused dockboard.

Element 4 of claim 20 of the McGuire patent is present in the accused 1300 series dockboard; this is because the linkage which moves the pivoted arm to its operative position is activated by the force of the cam (38) which in turn is activated by a roller (88) at the end of a lifting arm (84).

Element 5 of claim 20 of the McGuire patent is also found in the 1300 series dockboard for the application of force upon the lever or arm causes the extension lip to rise to its horizontal position.

Element 6 of claim 20 of the McGuire patent is found in the accused 1300 series by a latching bar (56) which is moved to its operating position by the cam (38) and mounted on the ramp structure through a link (74).

Element 7 of claim 20 of the McGuire patent is found in the linkage mechanism (62) which connects the lever or arm of the extension lip by a pin (68) with the stop member (56) at pivot (50) and by transmittal of the force created by the weight of the lip. Such linkage cooperates with the stop member (56) to support the arm or lever in its operative position.

Element 8 of claim 20 of the McGuire patent is found in the accused 1300 series because a torsion spring is attached

to the posterior end of the notched bar or stop mechanism in (56) and bears against the cam (38). As the cam (38) pivots, the torsion spring moves the notched bar or stop member (56) to its operative position.

Accordingly, I find that the accused 1300 series dockboard contains all of the elements of claim 20 of the McGuire patent and that the elements perform substantially the same function in substantially the same manner to achieve substantially the same result. I conclude that the 1300 series dockboard infringes claim 20 of the McGuire patent if the latter be found to be valid and enforceable.

### D. The Pfleger Patent (3,137,017)

The Stockton model dockboard is alleged to have infringed claim 1 of the plaintiff's Pfleger patent. The parties have stipulated that elements 1–5 inclusive and elements 6–10 inclusive are present in the accused Stockton model dockboard. The remaining area of dispute is whether the accused model includes a series of abutments as set forth in element 6 of claim 1 of the Pfleger patent as shown in plaintiff's exhibit 45.

As I see it, the abutments set forth in element 6 of claim 1 of the Pfleger patent are present in the accused Stockton model since support legs which are attached to the ramp engage a series of exposed step type abutments which support the ramp and prevent descent.

■ I believe that all of the elements set forth in claim 1 of the Pfleger patent are found in the accused Stockton model, and that such elements perform substantially the same function in substantially the same manner to achieve substantially the same result. The accused Stockton model dockboard infringes claim 1 of the Pfleger patent if the latter is valid and enforceable.

### II. VALIDITY

#### A. The Reissue Patent

■ Under 35 U.S.C. § 282, a patent is presumed to be valid, and the defendant has the burden of proof to prove invalidity. The defendant contends that the Reissue patent is invalid because the claims define a structure which is obvious in view of the prior art as provided in Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). In support of this contention, the defendant cites as prior art the Loomis patent, 2,592,919, the Pennington patent, 2,993,219, and the Rowe patent, 2,644,971.

In my opinion, none of this claimed prior art employs the teaching of the Reissue patent. None of the patents cited employ a knuckle-joint hinge between the ramp and extension lip which enables the extension lip to pivot from the pendant position to the horizontal position. Also, none of the cited prior art employs a latching mechanism which supports the extension lip in its horizontal position. It is my conclusion that the teaching of the Reissue patent was not obvious to an ordinary person skilled in the dockboard art.

■ Although the question of commercial success is a secondary consideration under the rule of Graham v. John Deere, it does give some indication of the degree of obviousness of the teachings of the patent. However, commercial success, in order to have legal significance, must be attributable to the claimed invention and not to some extraneous factor such as extensive advertising. Schreyer v. Chicago Motocoil Corp., 118 F.2d 852 (7th Cir. 1941). The commercial success of the dockboard disclosed in the Reissue patent was described in the testimony of Robert Pfleger; I believe that this commercial success reflects the novelty of the invention.

The defendant has admitted the infringement of claim 13 of the Reissue patent if it be found valid and enforceable. The plaintiff admits that the original application 808,993 does not disclose means to support the ramp when positioned in a position level with the loading dock. However, the plaintiff asserts that claim 13 of the Reissue patent

is not directed to means to support the ramp in such position but to the lost motion connection which enables the ramp to float up and down with the variations of heights of truck beds during the loading and unloading process. This lost motion connection is fully disclosed in the drawings and descriptions of patent 2,-974,336, and there was no new matter introduced in the application for reissue of the patent. See Hazeltine Research v. Avco Manufacturing, 227 F.2d 137 (7th Cir. 1955).

In response to the defendant's request for admissions, the plaintiff admitted:

"18. Claims 1, 11 and 13 of the Kelley Reissue Patent 25,249 cover the 'Model 1300 Series' dockboard offered for sale by the Kelley Company prior to May 9, 1959."

It is undisputed that the filing date of the Reissue patent is May 9, 1960. It is also undisputed that the Reissue patent is invalid unless supported by the earlier application, 808,993.

At trial, the plaintiff offered testimony through Robert Pfleger that this admission was made early in the discovery period and was subsequently discovered to be in error. The plaintiff offered two photographs into evidence (plaintiff's exhibits 60 and 61) which demonstrated that the dockboard installed in Detroit did not have any means present to support the dockboard while in an inoperative position level with the loading dock. The Detroit dockboard was the first public installation of a dockboard corresponding to the Reissue patent.

█ In view of this evidence and the absence of any evidence in support of the plaintiff's "admission", I find that the plaintiff has rebutted its admission and that claim 13 of the Reissue patent was not sold or publicly disclosed more than one year prior to the continuation-in-part application, 26,509.

In my opinion, the plaintiff is entitled to receive the benefits of the April 27, 1959 filing date for application no. 808,993. The defendant stipulated that the sole point of disagreement was whether element 7 or cooperating means of claims 1 and 11 were present in the original application, 808,993. I find that such elements were present.

The original application disclosed that the lip extension was connected to the ramp by means of a knuckle-joint hinge. The principal feature of a knuckle-joint hinge is that it permits the rear edge of the extension lip to abut the leading edge of the ramp whenever the extension lip is rotated from its pendant position to its horizontal position. The contact of the rear edge of the extension lip with the leading edge of the ramp constitutes cooperating means to prevent the upward movement of the lip beyond the horizontal position. As such, the original application discloses the invention in such a manner as to enable an ordinary person skilled in the dockboard art to make and use the invention. See General Talking Pictures Corp. v. Western Electric Company, 304 U.S. 175, 58 S.Ct. 849, 82 L.Ed. 1273 (1938). I conclude that the Reissue patent is valid.

B. The Kelley Patent

The defendant contends that the claims of the Kelley patent are obvious in view of the prior art of the Auto-Mechanical dockboard. Although both the Auto-Mechanical patent and the Kelley patent employ a snap line to elevate the extension lip, the Kelley patent also teaches a latching structure which eliminated the critical latching position employed by Auto-Mechanical, and such latching device was not obvious to an ordinary person skilled in dockboard art.

Accordingly, I find that the Kelley patent is valid for its claims are not obvious to an ordinary man skilled in the dockboard art.

C. The McGuire Patent

The defendant contends that claims 16 and 17 of the McGuire patent are invalid in view of the prior art of the Lambert patents 3,255,478 and 3,308,497.

The teaching of the Lambert patents is the use of an over-toggle mechanism to assist in the swinging of the lip to its operative position and to insure that the

lip is drawn in towards the ramp when in the non-operative position so that the lip will engage a hydraulic switch and stop the hydraulic action.

In contrast, the teaching of the Mc-Guire patent is the use of a dead-center mechanism to assist in the swinging of the lip to its operative position. Use of the over-toggle mechanism employed by the Lambert patents would change the main counter-balancing spring force and render the ramp inoperative by a dock attendant of average weight.

The use of a dead-center condition is novel because traditional engineering concepts avoid dead-center positions. In my opinion, the claims of the McGuire patent are not obvious to an ordinary person skilled in the dockboard art. Accordingly, I hold that the McGuire patent is valid.

### D. The Pfleger Patent

The defendant contends that the teaching of the Pfleger patent is obvious in view of the prior art shown on defendant's exhibit 181. This contention is without merit because none of the devices cited as prior art acts as a safety device when in a non-operative position. In addition, none of the prior art relates the Pfleger patent are not obvious to an to a ramp. In my opinion, the claims of ordinary person skilled in the dockboard art. Accordingly, I find that the Pfleger patent is not invalid for obviousness within the meaning of 35 U.S.C. § 103.

### III. CONCLUSION

■ The plaintiff, in my opinion, did not practice any fraud on the patent office and is not barred from relief under the clean hands doctrine. The four patents in question are valid and are infringed by the defendant's dockboards. However, the plaintiff is not entitled to either attorneys' fees or treble damages. In my opinion, this is not an exceptional case within the meaning of 35 U.S.C. § 285. Plaintiff's counsel may present findings of fact and conclusions of law for my signature after exhibiting them to defendant's counsel.