**Samuel S. OTIS**
v.
**NATIONAL TEA COMPANY.**
No. 11258.

United States Court of Appeals
Seventh Circuit.
Jan. 6, 1955.

**154**

Edwin Phelps, Wilmette, Ill., for appellant.

Harry C. Alberts, Chicago, Ill., for appellee.

Before LINDLEY, SWAIM and SCHNACKENBERG, Circuit Judges.

SWAIM, Circuit Judge.

The plaintiff, Samuel S. Otis, was granted United States Letters Patent No. 2,459,391 on what he designated a "knife rack and edger." The defendant subsequently began using a similar rack in its stores, and plaintiff filed an action for infringement of his patent, praying for damages and injunctive relief. After hearing evidence, the District Court dismissed the complaint, finding plaintiff's patent invalid for lack of utility and invention. From that judgment the plaintiff prosecutes this appeal.

For years it has been the practice of butchers to keep their knives in a rack fastened to the side of their meat block. These racks were usually made of wood. But, because wood is soft and porous, wooden racks tend to absorb blood and retain particles of meat thereby making it difficult to keep them in a sanitary condition. Therefore, health officers in recent years have been encouraging butchers to use metal racks which are easily cleaned. Otis admits that the need for greater sanitation first led him to develop his "knife rack and edger."

The Otis rack is basically a horizontal strip of aluminum with slits in it in which the knives are held. The slits are wide enough to let the knife blades fall through them, but narrow enough to keep the handles from passing through.

The Otis rack, as described in the patent, is different in only two respects from the wooden racks which were then in common use. In the first place, the patent calls for the use of metal in the construction of the rack, rather than wood. The patent states: "The rack and edger of my invention may be formed of any suitable material, sufficiently hard to exert an abrasive and truing effect upon the cutting edge portions of the knife blades, preferably of a non-absorbent material such as metal. I have found stainless steel to be particularly suitable." However, the commercial rack produced and sold by plaintiff is made of aluminum alloy. The mere substitution of metal for wood, of course, does not constitute invention. Associated Plastics Companies v. Gits Molding Corp., 7 Cir., 182 F.2d 1000, 1005; Heath v. Frankel, 9 Cir., 153 F.2d 369, 371. It was a development which would have been obvious to any skilled mechanic.

The second innovation claimed by Otis was that at the lower end of the slots for the knife blades there were "downwardly converging lips extending from

the opposite sides of said opening each having at its lower edge an edging element, said edging element defining the sides of a slot adapted for reception of a knife blade moved vertically therethrough so that the cutting edge portion of said blade is brought into edging contact with one of said edging elements when said blade is moved lengthwise through said slot with the back edge of the blade in contact with the other edging element." Thus, plaintiff's only claim to invention as to the construction of his rack is that he has constructed a device which combines, for the first time, the properties of a knife rack and edger.

Sharpening and maintaining a knife blade involves three distinct operations: grinding, honing and edging. The blade edge is sharpened by grinding and honing. When this is done a microscope will show that the edge actually consists of many tiny "teeth." It is these teeth that do the actual cutting, and to cut most efficiently they must be aligned in the same plane as the knife blade and be pointed toward the tip of the knife. Edging is the process of so aligning these microscopic teeth on a sharp knife. It is usually done on a steel which is harder than the blade being edged. It does not remove any of the metal of the blade; it simply "sets up" the edge so that it cuts more efficiently and stays sharp longer. Edging cannot sharpen a dull blade; it only tends to prevent a sharp blade from becoming dull. Good butchers use the steel on their knives before and after each use.

It is plaintiff's claim that inserting knives into and removing them from his rack has an edging effect. He insists that although it does not entirely take the place of edging with a butcher's steel, it does reduce the number of times such edging is necessary. However, the trial judge found that knives kept in wooden racks retained their edges longer than knives kept in metal racks. While the evidence was conflicting on this point there was more than sufficient evidence to sustain the finding of the trial judge.

Plaintiff's witness, Mr. Engstrom, was a butcher and admittedly a friend of the plaintiff. He had been using the Otis rack for several years and testified: "In my estimation I do not steel my knives as much now as I did before, and they are much cleaner to use." On cross-examination the witness admitted that he was not an expert on knives or knife sharpening, and that he did not know whether an edging steel should be harder or softer than the knife being edged. He insisted that he edged his knives fewer times since using plaintiff's knife rack but admitted that he had kept no records and that his statement was based only on his recollection.

The defendant's first witness was Mr. Danielson, Vice President of the Chicago Cutlery Company. This Company manufactures cutlery and maintains a rental service whereby butchers are supplied with all the knives they need. About every two months the service replaces its customers' used knives with sharp ones. The Company sharpens and repairs the knives used in this service. In addition to his responsibilities in helping to run this rental service, Mr. Danielson designs knives for customers who have special cutting problems. In short, Mr. Danielson is an expert on cutlery and its proper maintenance. He testified that knives kept in a metal rack required more maintenance to keep them sharp than knives kept in wooden racks; that knives kept in metal racks had to be honed more often to sharpen them. He also testified that knives cannot be edged on metals which are softer than the steel of the knife. When asked how he thought aluminum would serve as an edging material, he indicated that it would be useless and might even dull the blade. Another witness, who was a metallurgist, testified that aluminum was much softer than knife blade steel.

The parties agree that in properly edging a knife the blade must be held at a definite angle to the steel, the degree of angle depending upon the degree of the bevel of the cutting edge of the blade. If the degree of angle is too small there

would be no effect on the edge. If held at too great an angle the edge of the knife would be ruined. An experienced butcher becomes expert in holding the blade at the proper angle against the steel when edging his knives.

All of the witnesses who were familiar with the method used by butchers in placing their knives in racks testified that the butchers either dropped, threw or tossed the knives into the slots. The plaintiff describes the operation in his patent as follows: "When replacing a used knife in the rack, the experienced meat cutter does not retain his grasp on the handle of the knife while inserting the blade thereof fully into the rack. To the contrary, he inserts the point of the blade in the slot in the rack, or may even merely align the blade with the slot, and then tosses the knife into the rack."

It would seem perfectly obvious that such handling of knives when placing them in the plaintiff's rack could not result in edging the blades even if the material of the edging elements were hard enough to put an edge on the knives. To have the blade at a proper angle to the edging element it would be necessary for the butcher to retain his hold on the knife handle and turn the blade to the proper angle. This is not done when the butchers are returning the knives to the rack.

The parties also agree that to properly edge a knife on a steel the knife must not only be held at the proper angle to the steel but must also be drawn down along the steel starting with the heel of the blade and ending at the point of the blade. This is necessary in order to have the microscopic saw-teeth of the blade all aligned and pointing to the tip. This position of the saw-teeth is necessary for the knife to have a cutting edge which will function properly. But Otis tells us that with this device the blades are edged "when moved lengthwise in either direction through the slot." If the edging elements of his device functioned at all the saw teeth of the blade would be pointed toward the heel of the blade by being inserted in the slot of the rack and pointed toward the tip of the blade only when being withdrawn. These counter movements of the blade would necessarily nullify each other and tend to destroy the cutting edge of the blade by breaking off or wearing out the saw-teeth of the blade.

It further appears that Otis was not the first patentee to claim a sharpening effect on knives by use of his design for a knife rack. United States Patent No. 1,742,102 was issued to Seagles in 1929. It described a wooden cabinet for holding butcher's tools. The cabinet contained a horizontal piece of wood with slits in it in which the knives were placed, just as they are in plaintiff's rack. These slits were lined with "cuffs" made of lead. In his application for a patent Mr. Seagles said: "The edges of these cuffs are also employed for wiping the blades of the implements withdrawn therefrom and by virtue of the contact of the blades of the implements with the edges of the metal cuffs the said blades will not only be wiped but will be shined and partly sharpened."

■ Even if we were to concede plaintiff's contention that his rack did have an edging effect on knives kept therein, it would be no more than an aggregation of two devices long known. He would have combined a rack and a steel. The bringing together of two known devices is not invention if each element merely performs its old function. Great A. & P. Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162; Fernandez v. Phillips, 9 Cir., 136 F.2d 404; Simplex Wrapping Machine Co. v. Schultz, 9 Cir., 128 F.2d 138. If the plaintiff's rack was all that he claims, it would be nothing more than a knife rack and a poor edger combined. No new function would be created by the aggregation of these two old ones. As the Supreme Court said in Great A. & P. Tea Co. v. Supermarket Corp., supra, at page 152, 71 S.Ct. at page 130: "The conjunction or concert of known elements must contribute something; only when the whole in some way exceeds

the sum of its parts is the accumulation of old devices patentable."

 A combination is no different than any other new device. To qualify as an invention it must be something that would not be obvious to the ordinary mechanic skilled in the particular field. An attempt to combine a knife rack and an edger, if possible, would occur to almost anyone interested in cutlery. The Seagles patent, discussed above, is proof that it actually did occur to someone twenty years before plaintiff's patent issued.

The plaintiff's claim lacks both utility and invention. The judgment of the District Court is

Affirmed.