**Elbert C. LEACH, Plaintiff-Appellant,**

v.

**ROCKWOOD & CO., Defendant-Appellee.**

**No. 16517.**

United States Court of Appeals
Seventh Circuit.

July 10, 1968.

Joseph G. Werner, Madison, Wis., Arthur H. Seidel, Allan W. Leiser, Milwaukee, Wis., for appellant.

Joseph P. House, Jr., Henry C. Fuller, Jr., Walter S. Davis, Milwaukee, Wis., for appellee.

Before HASTINGS, FAIRCHILD and CUMMINGS, Circuit Judges.

HASTINGS, Circuit Judge.

Elbert Leach appeals from an adverse judgment entered June 29, 1967, following a bench trial, in his patent infringement action against appellee Rockwood & Co. The trial court held the patent in suit invalid and not infringed.

The patent in suit, Patent No. 2,580,-306, was issued to appellant and others December 25, 1951 and covers an automatic silo unloader. Nine of the patent claims were involved in the suit and all were held invalid and not infringed. Leach v. Rockwood & Company, D.C.W.D. Wis., 273 F.Supp. 779 (1967). Since the trial of this case we have considered eight of these claims in a companion case and held them invalid. Leach v. Badger Northland, Inc., 7 Cir., 385 F.2d 193 (1967). Appellant does not press his appeal as to those eight claims.

The sole claim in issue is Claim 8, which covers:

"A silo unloader, for installation in a silo above the surface of the silage, comprising a vertically movable spider-like frame having a center portion and three horizontally radiating arms, which arms are adapted to engage with the sides of the silo to center the frame within the silo, three suspension cables connected to the arms, which cables are adapted to extend vertically over pulleys mounted above the same in the top of the silo and to be connected together beyond the pulleys whereby to support the frame against substantial tilting and provide in effect a single raising and lowering cable for the frame operable from a point outside the silo, said cables also acting to support the weight of the frame and to restrain the frame against rotation while allowing the frame to turn a part of a revolution, an arm journalled on a vertical axis

in the center portion of the frame and extending horizontally beneath the frame for rotation in a horizontal plane, means associated with said last mentioned arm for loosening the silage and moving the loosened silage inwardly toward the center portion of the frame, means mounted on the frame for rotating said arm, and means also mounted on the frame for conducting the loosened silage to a point outside the silo, said conducting means including a portion which extends laterally between two of the suspension cables and is pivoted for horizontal movement relative to the frame."

The alleged infringing device is appellee's Volumatic silo unloader, which appellee's predecessor in interest began producing in 1957. The cutting means of the Volumatic is an auger mounted under and aligned with a horizontal cutter arm. The cutter arm measures approximately three-quarters the diameter of the silo in which the unloader is installed, and the auger measures slightly longer than the radius of the silo. The outer ends of the arm and the auger are in close proximity to the silo wall. At the inner end of the auger, slightly past the center of the silo, a fan casing intersects the cutter arm. A motor is mounted on the cutter arm beyond the casing. At the outer end of the cutter arm two rubber wheels engage the silo wall, and at the arm's inner end a spring-loaded arm extends to the opposite silo wall. Another arm, attached to the cutter arm near the fan casing, extends laterally at an angle of ninety degrees to the silo wall. Rubber wheels are mounted at the ends of both extension arms.

The fan casing on the Volumatic opens upwardly into a short duct which is journaled on a frame. The frame consists of three radially-extending beams joined together to form a small equilateral triangle at the center of the frame. Mounted on struts below the frame is a large circular track of a diameter a few feet less than that of the silo. Perforations in the track mesh with the teeth on a gear mounted horizontally on top of the cutter arm near its outer end. The gear is attached by means of a drive shaft to the motor on the cutter arm.

A discharge duct is journaled above the frame and aligned with the short duct atop the fan casing. It curves upwardly and laterally and extends slightly beyond the wall of the silo.

Cables are attached to the ends of the three arms of the frame and extend up to individual pulleys affixed to the silo wall near the top of the silo. The pulleys form the vertices of an imaginary equilateral triangle. The three cables are joined together beyond the pulleys and extend down to a winch installed at ground level outside the silo.

In operation the Volumatic is lowered in the silo by means of the cables and winch until the auger rests on the silage bed. The motor on the cutter arm powers the gear mounted near the outer end of the arm. The gear engages the perforations in the circular track attached below the frame and moves the cutter arm around the track.

As the cutter arm moves around the track across the silage bed, the auger, powered by the motor, loosens the silage and moves it toward the fan casing. The silage is forced into the fan casing through a rectangular opening. The fan, mounted vertically and powered by the motor, pneumatically and mechanically picks up the silage and propels it upwardly through the duct and discharge duct, which protrudes through the vertical opening in the side of the silo.[1] The silage falls to a receptacle on the ground.

The axis on which the auger of the Volumatic rotates is the axis of the silo. The outer end of the auger is held close to the wall of the silo by the spring-loaded extension arm at the opposite end of the cutter arm and by the reverse thrust of the auger itself. The two rubber

---

1. When the silo is filled, the vertical opening is closed off by a series of removable panels. As the silage is removed, panels above the silage floor are removed.

wheels at the outer end of the cutter arm ride along the silo wall and keep the auger from striking it. The lateral extension arm mounted perpendicular to the cutter arm also engages the silo wall and prevents the unloader from swaying.

The ducts which convey the silage from the fan to the outside of the silo pass through the center portion of the frame and connect with the opening in the top of the fan casing. Since the fan casing is off-center relative to the center of the silo, the frame is off-center and its diameter is less than the diameter of the silo. When the unloader is operating, the frame swings in an orbit within the silo. Its ends do not engage the side of the silo.

### VALIDITY

The essence of Claim 8 in suit is a three-point suspension system utilizing a three-armed frame suspended from cables, which system keeps the unloader level and restrains the frame from rotation, while allowing a limited amount of reverse rotation to overcome resistance to the cutting means. According to the claim and appellant's argument, when the cutting means encounter resistance from frozen or compacted silage the torque produced by the driving means will rotate the frame counter to the normal rotation of the cutter arm. This rotation will twist the cables, lifting the unloader up and away from the silage bed. The weight of the unloader will cause the cables to straighten, dropping the unloader onto the silage bed, and this momentum will overcome the resistance to forward movement of the cutter arm.

The trial court concluded that the patent in suit did not satisfy the statutory requirement of nonobviousness. 35 U.S.C.A. § 103. The court then stated:

"The conclusion that the patent in suit does not satisfy the nonobviousness requirement of 35 U.S.C. § 103 applies to all the claims involved in this action. As to claim 8, it appears that the most pertinent prior art was cited to the patent examiner, and as to that claim a presumption of patent-

ability applies. However, this court concludes that the Burgess patent contains all the essential elements of claim 8 and therefore claim 8 should not have been allowed." 273 F.Supp. at 791.

We interpret the court's language as a finding that Claim 8 is invalid both for obviousness and for anticipation by Burgess Patent No. 1,233,308. Before this court appellee has all but conceded appellant's argument that the trial court erred in finding anticipation by Burgess.

We agree with appellant. Burgess discloses a silo unloader suspended by a single cable and restrained against rotation by a bucket elevator affixed to the frame and extended through the vertical opening in the silo. The trial court apparently mistook four struts rigidly attached to the frame for a four-point suspension system. Burgess clearly does not anticipate the three-point flexible suspension system of the claim in suit. The court's finding of invalidity must be sustained, if at all, on the ground of obviousness.

The statutory presumption of patent validity conferred by 35 U.S.C.A. § 282 is only overcome by clear and cogent evidence of invalidity. Ortman v. Maass, 7 Cir., 391 F.2d 677 (1968); King-Seeley Thermos Co. v. Tastee Freez Industries, Inc., 7 Cir., 357 F.2d 875, cert. denied, 385 U.S. 817, 87 S.Ct. 38, 17 L.Ed.2d 56 (1966); Devex Corporation v. General Motors Corporation, 7 Cir., 321 F.2d 234 (1963), cert. denied, 375 U.S. 971, 84 S.Ct. 490, 11 L.Ed.2d 418 (1964). The presumption is stronger when the most pertinent prior art patents were cited by the Patent Office. Schnell v. Allbright-Nell Company, 7 Cir., 348 F.2d 444 (1965), cert. denied, 383 U.S. 934, 86 S.Ct. 1062, 15 L.Ed.2d 851 (1966); Ekstrom-Carlson & Co. v. Onsrud Machine Works, Inc., 7 Cir., 298 F.2d 765, cert. denied, 369 U.S. 886, 82 S.Ct. 1160, 8 L.Ed.2d 287 (1962); Hunt v. Armour & Co., 7 Cir., 185 F.2d 722 (1950).

The most pertinent prior art patents are Keys Patent No. 1,479,990 and Seidel

Patent No. 844,693. Keys discloses a silo unloader with a circular frame suspended by three cables that extend through pulleys at the top of the silo to a winch. Shoes on the frame engage three vertical rails on the silo wall to restrain the frame from rotation. The file wrapper of the patent in suit shows that the claim in suit was initially rejected by the Patent Office partially on the ground that Keys discloses the expedient of suspending the frame on three cables. The claim was allowed after appellant argued the novelty of the limited reverse rotation feature.

Seidel discloses a portable leach-clearing apparatus for cleaning leach tanks. The frame of the apparatus is suspended by two sets of cables from trolleys which travel on an overhead rail system. Shoe extensions on the frame engage vertical channels in the leach tanks to prevent rotation of the frame. Seidel was cited by the Patent Office.

Appellant recognizes that the suspension system of the claim in suit differs from that of Keys and Seidel only in the elimination of the vertical rails or channels used to restrain rotation, stating:

"The use of several flexible, hanging cables to restrain rotation was unobvious, for their inherent flexibility suggests an inability to hold a frame in position. The inventors' concept of utilizing cables for the purpose, while at the same time taking advantage of some limited reverse rotation to aid silage cutting action was highly ingenious. They combined two directly opposed concepts, i. e. restraint of rotation and limited permissive rotation, and the mixture of such cross purposes was an act of the ingenuity of the inventor."

We conclude that the elimination of the rails, permitting limited frame rotation, was an obvious expedient. The evidence of obviousness is clear and cogent, and the claim in suit is, for that reason, invalid. The suggested hypothesis that flexible cables could not hold the frame against rotation conflicts with natural laws of gravity, friction and vectors—all of which were well-known before appellant's invention. One skilled in the art would have known of these forces, as would most who, as children, experimented in a playground swing. He would have known that the weight of the unloader would tend to counteract the torque produced by the driving means and drive the cutting means through the silage. As a corollary, he would have known that if the forward movement of the cutter arm were stopped by the mass of silage, the torque produced by the driving means would rotate the frame and the unloader would be lifted up and away from the silage only to be forced down into the silage with increased momentum by the force of gravity.

The trial court correctly found the patent invalid for obviousness.

### INFRINGEMENT

Although we might affirm the judgment below on the sole ground of invalidity, we also consider the infringement issue, assuming for that purpose the validity of the patent claim in suit.

The infringement issue turns on a single element of Claim 8: "a vertically movable spider-like frame having a center portion and three horizontally radiating arms, which arms are adapted to engage with the sides of the silo to center the frame within the silo * * *." It is not questioned that the Volumatic responds to the remainder of Claim 8.

The test of infringement is whether the device claimed in the patent and the alleged infringing device perform substantially the same function in substantially the same way to obtain the same results. Graver Tank & Mfg. Co. v. Linde Air Products Co., 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (1950); Ortman v. Maass, supra; Elgen Manufacturing Corp. v. Ventfabrics, Inc., 7 Cir., 314 F.2d 440 (1963).

The trial court found that the word "center" in Claim 8 refers to the geometric center of the silo, that the Volumatic does not respond to the centering requirement and that the off-center loca-

tion of the frame on the Volumatic is essential to its operation, not merely accidental or incidental.

The frame of the patent in suit has two principal functions. First, it serves as a stable platform against which the driving means can develop the torque to propel the cutter arm. Second, it serves as a guide for the unloader, holding the pivot of the cutter arm at the geometric center of the silo so that the cutting means will cover the entire surface of silage in each revolution without striking the silo wall. These functions are clearly apparent when the claim in suit is read in light of the specifications, as it may be. Cf. Ortman v. Maass, supra; Oregon Saw Chain Corp. v. McCulloch Motors Corp., 9 Cir., 323 F.2d 758 (1963), cert. denied, 377 U.S. 915, 84 S. Ct. 1180, 12 L.Ed.2d 186 (1964); Minnesota Mining and Mfg. Co. v. Technical Tape Corp., 7 Cir., 309 F.2d 55 (1962), cert. denied, 372 U.S. 942, 83 S.Ct. 936, 9 L.Ed.2d 968 (1963).

The Volumatic frame performs the same stabilizing function performed by the frame of the patent in suit. Although it swings in an orbit within the silo during operation, it resists rotation, thereby permitting the driving means to develop sufficient torque to propel the cutter arm.

The Volumatic frame does not perform the guiding function of appellant's frame. That function is performed on the Volumatic by the cutter arm and its two extension arms. The spring-loaded extension arm keeps the outer end of the auger close to the silo wall for a close cut, while the rubber wheels at the outer end of the cutter arm protect the wall. The laterally-extending arm keeps the cutter arm on the diameter of the silo. This guidance method permits the cutter arm to follow the wall of out-of-round silos, cutting the silage that would be missed if the arm were rigidly held to the central axis of the silo. The frame on the Volumatic follows the cutter arm around the silo.

Appellee's transfer of the guidance function from the frame to the cutter arm was not an idle modification or a mere change of form to avoid infringement. It represents an improvement on frame-centered unloaders, permitting a closer cut in out-of-round silos. Furthermore, when appellee and other manufacturers began building unloaders with fan casings located under the frame with the cutting means, centered frames became impractical. Apparently the fan casing must be located under the center of the frame for the discharge ducts to function properly. Therefore, if the frame were centered, the fan casing would rest at the center of the silage bed. There would be no way to remove the core of silage under the casing and the downward movement of the unloader would be obstructed. To avoid this appellee designed the Volumatic with the fan casing and frame off-center.

We conclude that the frame claimed in the patent in suit and the Volumatic frame have substantially different functions. We hold the patent in suit is therefore not infringed. The trial court's findings are not clearly erroneous and the legal criteria it applied are correct.

The judgment of the district court holding Claim 8 of the patent in suit to be invalid and not infringed is affirmed.

Affirmed.