**John T. JURSICH et al., Plaintiffs,**

v.

**J. I. CASE COMPANY, Defendants.**

**No. 70 C 1128.**

United States District Court,
N. D. Illinois, E. D.

Oct. 5, 1972.

Phillip H. Mayer, Wolfe, Hubbard, Leydig, Voit, Osann, Chicago, Ill., for plaintiffs.

Anthony R. Chiara, Hill, Sherman, Meroni, Gross & Simpson, Chicago, Ill., H. P. Settle, Cullen, Settle, Sloman & Cantor, Detroit, Mich., for defendants.

## DECISION and JUDGMENT

McMILLEN, District Judge.

Plaintiffs are owners and the licensee of Gremillion patent No. 3,390,533. They filed a complaint for infringement against the defendant who is manufacturing a competitive device as licensee under Davis patent No. 3,363,423. Defendant filed a counterclaim alleging that plaintiff's patent is invalid for several reasons. Defendant also denies any infringement even if plaintiff's patent is valid.

■ On the basis of all the evidence, the court finds and concludes that plaintiff's Gremillion patent No. 3,390,533 is invalid by virtue of having been put in public use on May 13, 1963; by virtue of having been described in a printed publication of Illinois Bell Telephone Company more than one year prior to Gremillion's application (35 U.S.C. § 102(b)); and because of anticipation by Higley's patent No. 3,357,498 (35 U.S.C. § 102(e)). The court also finds and concludes, however, that the other defenses of the defendant, including non-infringement, have not been proved by the evidence.

Plaintiff Gremillion developed a machine for laying cable and similar materials underground by the use of a plow which is vibrated by counter-rotating weights. As the plow is pulled along by a conventional tractor, the counter-rotating weights cause the plowshare to vibrate vertically. This opens up a slit in the ground into which a cable can be fed by a tube attached to the plowshare. The apparatus has the advantages of requiring considerably less tractor pulling power than the traditional static plows and of opening up much less of the ground's surface than either a static plow or a plow vibrated by a single eccentric weight.

■■ We have no doubt that Gremillion conceived an invention by his own independent work. His invention has met with considerable commercial success, which fact militates toward proof of patentability. See Graham v. John Deere Co., 383 U.S. 1 at 17–18, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). Nor does the fact that others conceived a similar idea at or before Gremillion's invention necessarily prove that it was obvious to one skilled in the art. The question remains, however, as to whether Gremillion's invention was patentable.

■ The flaw with Gremillion's patent is that he demonstrated his machine to Lloyd Brisk of Illinois Bell Telephone Company almost a year and a half before filing his application. Mr. Brisk, an engineer knowledgeable in the field, had been investigating vibratory plows for possible use in laying cable and had inspected various units in the Spring of 1963. He discussed this project with Gremillion on several occasions and was then given a demonstration on an open field next to Gremillion's premises on May 13, 1963. There was no confidential relationship between Brisk and Gremillion, and the obvious purpose of the demonstration was an attempt to sell the invention to the telephone company. This was not claimed to be an experimental use, and there is no evidence that the machine did not work satisfactorily or was changed in any significant way between that date and the filing of the application on October 1, 1964. This public use invalidates the patent under 35 U.S.C. § 102(b). City of Elizabeth et

al. v. American Nicholson Pavement Co., 97 U.S. (7 Otto) 126, 24 L.Ed. 1000 (1877); see also Watson v. Allen, 103 U.S.App.D.C. 5, 254 F.2d 342 (1958).

■ Furthermore, Brisk made a written report of this plow to his supervisor in the telephone company, L. A. Kemnitz. Kemnitz thereafter read the report at an inter-company meeting of telephone company engineers on June 26, 1963.* The report was incorporated into the printed minutes of the meeting and was disseminated to engineers of at least 11 affiliated but independent telephone companies within a month or two after the conference. The report described Gremillion's invention with considerable accuracy, and the recipients were engineers who had the requisite interest and potential to reproduce it themselves. In this court's opinion, the report constitutes an adequate description to constitute a public dedication. Since it occurred more than a year prior to the application, this also invalidates the patent. 35 U.S.C. § 102(b) and see Seymour v. Osborne, 11 Wall. 516, 78 U.S. 516, 20 L.Ed. 33 (1870).

■ Finally, defendant proved that Roland Higley of Artesia, New Mexico developed a similar machine and filed a patent application on May 11, 1964, several months before plaintiffs' filing. The application in Higley No. 3,357,498 was for a "soil ripper" to displace soil and surface for areation and the like (Dft. Ex. AR–13). Since the Patent Office did not cite Higley's patent in issuing Gremillion's, the presumption of validity which attaches to Gremillion's patent can be rebutted by Higley's. Skirow v. Roberts Colonial House, Inc., 361 F.2d 388 (7th Cir. 1966).

■ Although Higley's patent does not mention cable or pipe laying and the patented machine had no attachment for this purpose, the balance of the invention anticipates Gremillion's in all material respects. Higley made his own counter-rotating weights which were mechanically clumsy and did not work as well as Gremillion's commercially manufactured vibrator, but the principle and the effect are the same (Col. 1, lines 37–46). The addition of a cable-laying guide on Gremillion's machine was not the essence of his invention, and he admitted that this attachment could be made without difficulty by persons skilled in the art. In fact, hereinafter the court finds no non-obvious difference between Gremillion's patent and defendant's Davis patent, which in effect is to find that the manner of affixing the cable guide does not make a material difference between these two inventions. It follows, therefore, that Higley's patent for a soil ripper anticipated Gremillion's patent for a cable-laying machine, 35 U.S.C. § 102(e) and § 103.

Defendant contends that plaintiff's patent was also anticipated by Harmstorf's U.S. Patent No. 3,287,922 and his corresponding French patent No. 1,320,976, both filed February 28, 1962. (Dft. Ex. AR–12 and AR–17). 35 U.S. C. § 102(e) and § 102(b) respectively. The U.S. Patent Office did not cite Harmstorf in issuing Gremillion's patent which is some evidence that it did not consider it to be prior art. Harmstorf's device does not purport to patent the concept of two counter-rotating weights to reduce an opening made for laying cable but uses one or more vibrating weights combined with vibration absorbers to counteract the vibrations. Among his various combinations are opposed oscillators (Col. 7, lines 18 and 19; element 116 and figure 4), but the essence of his invention seems to be the use of a

---

* A copy of the exhibit evidencing this report was not originally furnished for the court's file, but I assume it is the same as the document entitled "Subject: Application of Vibration to Wire Plows for Buried Service Wires Exhibit XI". This particular document was furnished pursuant to the court's request to de-fendant's attorney on Sept. 8, 1972, and balance of Dft.Ex. N confirms the date and circumstances of publication. Other material concerning a conference in New Orleans on Nov. 26–28, 1962 must have been submitted erroneously on Sept. 8, 1972.

hydraulic pressure stream with a vibrating device or "tool", to lay pipe or cable under water. So far as this court can perceive from the claims, Gremillion's invention was a distinct advance on Harmstorf's technique and was directed to specific problems with which Harmstorf was not apparently concerned. We cannot justify setting aside Gremillion's patent in the face of Harmstorf's vague and over-broad claims.

Defendant also contends that the Higley device was used to lay pipe in 1961 and thereby, together with other evidence, constitutes the state of the art. We do not believe modern-day law requires obviousness to be proved beyond a reasonable doubt (as plaintiffs contend), but the proof must be clear and cogent to achieve the result sought by defendant. Leach v. Rockwood & Co., 404 F.2d 652 (7th Cir. 1968). And of course the defendant has the burden of proof. It was not sustained. Even if Higley had used his soil ripping machine for laying cable or pipe by the use of two counter-rotating weights in June 1961, he abandoned this part of his project, and it was not publicized beyond West Texas and New Mexico.

Granting that the Higley and Harmstorf machines afford some evidence of the state of the art, there is no showing that either of these inventors was merely a skilled mechanic or that they were representative. Harmstorf is not identified as to his skills or even his field of expertise. Higley considered himself an inventor, not a mere mechanic. We believe that both he and Gremillion were inventors, but Higley was there first in this instance. We find that, on the basis of all the evidence, the state of the art in the winter and spring of 1962–1963 was not shown to be such as to make Gremillion's invention obvious under Section 103.

Although we have found plaintiff's patent to be invalid, the issue of defendant's alleged infringement was also litigated. In the interest of disposing of all principle issues at the trial stage, we find, in the alternative, that defendant did infringe by manufacturing under Davis patent No. 3,363,423. The parties agree that this patent in and of itself can be used as evidence of defendant's alleged infringement, without the necessity of introducing into evidence any machines made under the Davis patent. The principle difference between the Gremillion and Davis patents is the manner in which the cable guide is affixed to the plowshare, the former being firmly welded and the latter being affixed by universal joints. A primary purpose of the Davis method is not to eliminate the vibration from the cable guide but to lay cable by a vertically vibrating blade. The cable-feeding connection is merely a refinement which has some advantages and some disadvantages, but we find that the Davis apparatus is substantially equivalent to Gremillion's, both as to manner in which it works and the result achieved.

Graver Truck & Mfg. Co. v. Linde Air Products Co., 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097, reh. den. 340 U.S. 845, 71 S.Ct. 12, 95 L.Ed. 620 (1950). The difference between the two inventions is not substantial enough to admit Davis to this field in derogation to Gremillion's invention. See North Star Ice Equipment Co. v. Akshun Manufacturing Co., 301 F.2d 882 (7th Cir. 1962). It follows, therefore, that defendant's patent would infringe Gremillion's, if Gremillion's were valid.

Since the court has already found that the plaintiffs' patent is not valid, however,

It is therefore ordered, adjudged and decreed that judgment be and it is entered in favor of the defendant J. I. Case Company.